# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALVIN JACKSON,<br><br>          Plaintiff,<br><br>     v.<br><br>BEARD, et al.,<br><br>          Defendants. | Case No. 1:14-cv-02043-DLB PC<br><br>ORDER DIRECTING ACTION TO GO FORWARD ON COGNIZABLE CLAIM AND DISMSSING REMAINDING CLAIMS AND DEEFENDANTS |

Plaintiff Calvin Jackson ("Plaintiff") is a California state prisoner proceeding pro se and in forma pauperis in this action pursuant to 42 U.S.C. § 1983. Plaintiff filed his complaint on October 20, 2014. He filed a First Amended Complaint on November 24, 2014, and it was transferred to this Court on December 22, 2014. Plaintiff names numerous Defendants, including state officials, officials at Pleasant Valley State Prison ("PVSP") and officials at Avenal State Prison ("ASP").[1]

On May 28, 2015, the Court screened Plaintiff's complaint and found that it stated a cognizable Eighth Amendment claim against Defendant Hartley, but it did not state any other cognizable claims for relief. Plaintiff was ordered to notify the Court whether he wanted to file an amended complaint, or whether he was willing to proceed only on the cognizable claim against Defendant Hartley.

---

[1] Plaintiff consented to the jurisdiction of the United States Magistrate Judge on November 24, 2014.

1

On June 25, 2015, Plaintiff informed the Court that he wanted to proceed only on his Eighth Amendment claim against Defendant Hartley.

**A.    SCREENING REQUIREMENT**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1),(2). "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" Id. (quoting Twombly, 550 U.S. at 555). While factual allegations are accepted as true, legal conclusions are not. Id.

Section 1983 provides a cause of action for the violation of Plaintiff's constitutional or other federal rights by persons acting under color of state law. Nurre v. Whitehead, 580 F.3d 1087, 1092 (9th Cir 2009); Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006); Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002). Plaintiff's allegations must link the actions or omissions of each named defendant to a violation of his rights; there is no respondeat superior liability under section 1983. Iqbal, 556 U.S. at 676-77; Simmons v. Navajo County, Ariz., 609 F.3d 1011, 1020-21 (9th Cir. 2010); Ewing v. City of Stockton, 588 F.3d 1218, 1235 (9th Cir. 2009); Jones, 297 F.3d at 934. Plaintiff must present factual allegations sufficient to state a plausible claim for relief. Iqbal, 556 U.S. at 678-79; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009).

1  The mere possibility of misconduct falls short of meeting this plausibility standard.  Iqbal, 556 U.S.
2  at 678; Moss, 572 F.3d at 969.

### B.     SUMMARY OF PLAINTIFF'S ALLEGATIONS[2]

Plaintiff is currently incarcerated at California State Prison, Los Angeles County.  The events at issue occurred while Plaintiff was incarcerated at PVSP and ASP.

Plaintiff is a 44-year-old African-American.  He was transferred to PVSP in 1999.  While at PVSP, Plaintiff complained about not feeling well, and PVSP transferred him to ASP in 2003.  Plaintiff remained at ASP until he was transferred in 2010.

Plaintiff became ill in 2005-2006, with trouble breathing and fluid in his lungs.  He first noticed symptoms in July 2005.  He was formally diagnosed with Valley Fever in May 2007.  Plaintiff underwent surgery due to Valley Fever in November 2011.  Currently, he cannot exert himself without getting winded, and his physical pain is so acute at times that he cannot get out of bed.

Plaintiff's condition continues to worsen, and his requests for stronger medications have been denied.  He has been told that he will have long-term problems.

When Plaintiff was transferred to ASP, he knew that he was in a high-risk category.  He requested a transfer prior to his diagnosis, but was denied because he did not meet the criteria for a transfer.  Plaintiff alleges that no preventative measures were taken to protect him.

Plaintiff alleges that prior to his 1999 and 2003 transfers, Defendants Cate, Hubbard, Igbinosa, Kelso, Schwarzenegger, Rothchild, Winslow and Yates were in a position to prevent him from being transferred to, or accepted at, PVSP and ASP.  They knew that African-Americans and persons with respiratory health complications were particularly susceptible to Valley Fever, yet they failed to act.  Around the time of his transfers, Plaintiff protested his placement at ASP and requested a transfer out, but on information and belief, Defendants Brazelton and Igbinosa denied the request, despite knowing that he was high-risk.

---

[2] Part of Plaintiff's First Amended Complaint is comprised of background information on the history of Valley Fever. The Court will omit the background information, as well as information only tangentially related to Plaintiff's own situation, from this summary.  The Court also notes that Plaintiff's First Amended Complaint is almost an exact copy of the First Amended Complaint filed in Smith, et al., v. Schwarzenegger, et al., 1:14-cv-00060-LJO-SAB, an action where Plaintiffs are represented by counsel.

Finally, Plaintiff alleges that Defendants Cate, Hartley, Hubbard, Kelso, Rothchild, Schwarzenegger and Winslow were in a position to prevent his transfer ASP, but they continued the ongoing policy and transferred Plaintiff to PSVP and ASP.

Plaintiff also sets forth a detailed history of the Valley Fever endemic in certain California prisons, including PVSP and ASP.

Based on these allegations, Plaintiff alleges a violation of the Eighth Amendment based on his transfer to a dangerous area (against prison leadership in their supervisory and personal capacities), violation of the Eighth Amendment based on deliberate indifference to inmate health (brought against prison medical leadership in their supervisory and personal capacity) and a premises liability claim under state law (against the State of California).

**C.  DISCUSSION**

  1.  Personal Liability

Section 1983 provides a cause of action for the violation of Plaintiff's constitutional or other federal rights by persons acting under color of state law. Nurre v. Whitehead, 580 F.3d 1087, 1092 (9th Cir 2009); Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006); Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002). To state a claim, Plaintiffs must demonstrate that each defendant personally participated in the deprivation of his rights. Iqbal, 556 U.S. at 677; Simmons v. Navajo County, Ariz., 609 F.3d 1011, 1020-21 (9th Cir. 2010); Ewing v. City of Stockton, 588 F.3d 1218, 1235 (9th Cir. 2009); Jones, 297 F.3d at 934.

Under section 1983, liability may not be imposed on supervisory personnel for the actions or omissions of their subordinates under the theory of respondeat superior. Iqbal, Iqbal, 556 U.S. at 677; Simmons, 609 F.3d at 1020-21; Ewing, 588 F.3d at 1235; Jones, 297 F.3d at 934. "A supervisor may be liable only if (1) he or she is personally involved in the constitutional deprivation, or (2) there is 'a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." Crowley v. Bannister, 734 F.3d 967, 977 (9th Cir. 2013) (citations omitted). Supervisors may be held liable where they "participated in or directed the violations, or knew of the violations and failed to act to prevent them." Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989); accord Starr, 652 F.3d at 1205-06; Corales v. Bennett, 567 F.3d 554, 570 (9th Cir. 2009).

4

a. *Defendant Brown*

Plaintiff is attempting to bring claims against current officials based solely on their position and the policies and procedures put in place by their predecessors.[3] In an official capacity lawsuit, it is appropriate to name the current official as a defendant in the action. Fed. R. Civ. P. 25(d). However, to state a claim against the *current* official in their personal capacity, a plaintiff must allege facts showing that the official was personally involved, or there was a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation. Crowley, 734 F.3d at 977.

Plaintiff has failed to set forth allegations to show that Defendant Brown had knowledge of a risk to Plaintiff and failed to act. Plaintiff's conclusory allegations that Defendant Brown knew of the risk and continued the state policies and practices put in place by Defendant Schwarzenegger is insufficient to show that Defendant Brown participated in any violation that caused injury to Plaintiff in this action.

Plaintiff therefore fails to state a claim against Defendant Brown.

b. *Defendants Beard and Brazelton*

Plaintiff contends that Defendants Beard and Brazelton had knowledge of the risk of Valley Fever due to the Grand Jury reports. However, the complaint fails to allege when these reports were provided to Defendants Beard and Brazelton. Additionally, the complaint does not identify the position at CDCR that these Defendants held during the time period in which Plaintiff contracted Valley Fever. Therefore, there is no information contained in the complaint from which the Court can infer that Defendants Beard or Brazelton were liable for the policy to house high risk inmates in the hyper-endemic area. Absent such factual allegations, the complaint is insufficient to link Defendants Beard or Brazelton to the alleged violations.

Plaintiff also alleges that Defendant Beard is the current Secretary of the CDCR, having been appointed to the position in December 2012. However, Plaintiff contracted Valley Fever in May 2007, long before Defendant Beard became the Secretary. Therefore, Defendant Beard cannot be

---

[3] Plaintiff is only seeking damages in this lawsuit. Plaintiff may not bring suit against Defendants in their official capacity. "The Eleventh Amendment bars suits for money damages in federal court against a state, its agencies, and state officials acting in their official capacities." Aholelei v. Dept. of Public Safety, 488 F.3d 1144, 1147 (9th Cir. 2007).

1 liable in his current position for the injuries that occurred to Plaintiff before he became Secretary.
2 Plaintiff fails to include any allegations for the Court to infer that Defendant Beard was in a position
3 that would create liability for his injuries prior to, or when, he contracted Valley Fever.

4 Further, Plaintiff alleges that Defendant Brazelton is the *current* Warden of PVSP.  However,
5 it is not clear from the complaint that Defendant Brazelton was the Warden prior to, or when,
6 Plaintiff contracted Valley Fever in May 2007.  It is especially unclear given that Plaintiff alleges
7 that Defendant Yates was the prior warden at PVSP, having assumed the position "since at least
8 2005." ECF No. 4, at 20.  Plaintiff confuses the allegations even more when he alleges that, on
9 information and belief, Defendant Brazelton denied his request that he not be transferred to ASP in
10 or before 2003, but it does not appear that he was the warden at that time.

11 Plaintiff therefore fails to state a claim against Defendants Beard or Brazelton.

12       c.      *Defendants Hubbard, Rothchild and Hysen*

13 Despite Plaintiff's allegations that prison officials have known of the risk of Valley Fever for
14 over 50 years, the fact that medical journals have published articles does not show that the risk was
15 evident to Defendants in this action.  Based on the allegations in the complaint, it was not until 2004
16 that a memo was provided to officials within the prison system which mentioned that the risk of
17 disseminated disease was highest in certain individuals.  In June 2007, the CCHCS issued
18 recommendations to address the spread of Valley Fever in the prison system and in November 2007
19 prison officials adopted their exclusion policy.  While Plaintiff sets forth numerous allegations
20 regarding information that was available *after* this time period, it is what Defendants knew at the
21 time that they acted, or when Plaintiff was housed at ASP or PVSP and contracted Valley Fever, that
22 is relevant in making the analysis of whether the complaint states a claim.

23 While Plaintiff alleges that Defendants Hubbard, Rothchild and Hysen had knowledge of the
24 risks of Valley Fever to specific classes of inmates, the complaint fails to allege that they held an
25 office during the time period at issue in this action.

26 For instance, Plaintiff alleges that Defendant Hubbard was the former director of CDCR's
27 Division of Adult Operations and issued a memo in November 2007 that "continued to allow
28 Plaintiff and others who were members of high-risk groups to be housed at hyper-endemic prisons."

6

ECF No. 4, at 18. However, the complaint does not allege that Defendant Hubbard was responsible for the policy that allegedly injured Plaintiff. Indeed, Plaintiff was diagnosed with Valley Fever in May 2007, months before Defendant Hubbard issued the November 2007 memo.

Similarly, the complaint fails to allege any information from which the Court can infer that Defendants Rothchild or Hysen held the position stated in the complaint at the time that Plaintiff was subject to the violations alleged in the complaint. For example, Plaintiff alleges that Defendant Hysen wrote a memo in 2007 suggesting remedial measures, but failed to implement any measures until years later. Plaintiff contracted Valley Fever in May 2007, so it is unclear whether Defendant Hysen issued the memo prior to Plaintiff's May 2007 diagnosis. As to Defendant Rothchild, Plaintiff simply alleges that she authorized the transfer of inmates to hyper-endemic prisons, but he does not allege when she did so, or how her authorizations were connected to Plaintiff's transfer.

To the extent that Plaintiff attempts to assert that the policies continue to violate the Constitution, Plaintiff is no longer at risk of contracting Valley Fever. Even if the policy has been continued by a successor, Plaintiff does not state a claim against current CDCR officials who were not involved in the policy prior to Plaintiff being injured. Plaintiff may not state a claim against current officials where their conduct did not cause or contribute to a completed constitutional violation that occurred in the past. See George v. Smith, 507 F.3d 605, 609-10 (7th Cir. 2007) (Only those who contribute to a constitutional violation are liable. "A guard who stands and watches while another guard beats a prisoner violates the Constitution; a guard who rejects an administrative complaint about a completed act of misconduct does not.")

          d.    *Defendant Yates*

Plaintiff alleges that Defendant Yates was the former warden of PVSP, but was the warden since at least 2005. According to his allegations, however, Plaintiff was transferred from PVSP in 2003, prior to 2004, when Plaintiff alleges that Defendants first became aware of the Valley Fever problem. He therefore fails to link Defendant Yates to the violations at issue.

///

///

///

7

    e. *Defendant Cate*

Similarly, Plaintiff alleges that Defendant Cate oversaw CDCR from 2008 to 2012, and failed to take any preventive measures to prevent Plaintiff from contracting disease. Plaintiff contracted the disease, however, in May 2007. He therefore fails to link Defendant Cate to the violations at issue.

  2. <u>Eighth Amendment Conditions of Confinement</u>

The Eighth Amendment "protects prisoners ... from inhumane methods of punishment ... [and] inhumane conditions of confinement." <u>Morgan v. Morgensen</u>, 465 F.3d 1041, 1045 (9th Cir.2006). Although prison conditions may be restrictive and severe, prison officials must provide prisoners with adequate food, clothing, shelter, sanitation, medical care, and personal safety. <u>Farmer v. Brennan</u>, 511 U.S. 825, 832, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). A prisoner may state "a cause of action under the Eighth Amendment by alleging that [prison officials] have, with deliberate indifference, exposed him to [environmental conditions] that pose an unreasonable risk of serious damage to his future health." <u>Helling v. McKinney</u>, 509 U.S. 25, 35, 113 S.Ct. 2475, 125 L.Ed.2d 22 (1993).

Plaintiff's conditions of confinement claim is based in part his contention that Defendants knowingly transferred him to prisons with high Valley Fever rates. For example, he states that prior to his 1999 and 2003 transfers, Defendants Cate, Hubbard, Igbinosa, Kelso, Schwarzenegger, Rothchild, Winslow, Yates, Hartley and Brazelton were in a position to prevent Plaintiff from being transferred to, or accepted at, PVSP and ASP. He also alleges that they knew that African-Americans and persons with respiratory health complications were particularly susceptible to Valley Fever, yet they failed to act. As explained above, however, Plaintiff's allegations show that it was not until 2004 that officials within the prison system had knowledge of the increased risk. Plaintiff's general citation to medical journals does not demonstrate that Defendants knew of the risk between 1999-2003, and failed to prevent it.

As to Plaintiff's allegations that Defendant Schwarzenegger failed to transfer him from ASP or take other corrective actions, he fails to sufficiently allege that Defendant Schwarzenegger had any personal involvement in these policies or failures. Plaintiff alleges that he allowed the Valley

8

1   Fever to continue "unabated," but there are no allegations to sufficiently link him to the violations.
2   Defendant Schwarzenegger is not liable for the policies of the CDCR where he did not participate in
3   or direct the violations, nor knew of the violations and failed to act to prevent them. Taylor, 880
4   F.2d at 1045. To the extent that Plaintiff attempts to state a claim based solely upon the decision to
5   house inmates in the endemic area or build in the endemic area, the complaint fails to state a claim.
6   See Sullivan v. Kramer, No. 1:13-cv-00275-DLB-PC, 2014 WL 1664983, at *5 (E.D. Cal. April 23,
7   2014) (being confined in an area where Valley Fever spores exist is insufficient to state a claim for
8   deliberate indifference).

9   Plaintiff also alleges that Defendant Winslow authored memos in June and November 2007
10  and made certain recommendations for reducing the risk of infection. However, such memos were
11  written after Plaintiff's May 2007 diagnosis. Even if the memos were written prior to Plaintiff's
12  diagnosis, Defendant Winslow was not deliberately indifferent to a risk, but instead made
13  recommendations to reduce the infection rate inside the prisons. Deliberate indifference occurs only
14  where the official fails to address a substantial risk of harm to the inmates. Simmons v. Navajo
15  County, Arizona, 609 F.3d 1011, 1018 (9th Cir. 2010).

16  Plaintiff next contends that Defendant Igbinosa, the medical director at PVSP, failed to adopt
17  or recommend practices or policies to address the infection rates. However, Plaintiff was transferred
18  from PVSP in 2003, prior to Defendants' alleged acquisition of relevant knowledge in 2004.

19  Insofar as Plaintiff alleges that Defendant Hartley, the Warden, failed to transfer him *after* he
20  arrived at ASP in 2003 and prior to his diagnosis in May 2007, and/or failed to take other adequate
21  protective measures, Plaintiff states a claim for relief.[4]

22  3.  Eighth Amendment- Medical Care

23  In the context of deliberate indifference to medical needs, deliberate indifference is shown
24  where the official is aware of a serious medical need and fails to adequately respond. Simmons, 609
25  F.3d at 1018. Deliberate indifference may be manifested "when prison officials deny, delay or
26  intentionally interfere with medical treatment," or in the manner "in which prison physicians provide
27  medical care." McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled on other
28

---

[4] Plaintiff will be instructed on service by separate order.

9

grounds, WMX Techs., Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc).

Plaintiff alleges that he experienced "unnecessary and wanton infliction of pain . . . since there were multiple means and methods to have avoided this harm," such as stopping transfers to hyper-endemic prisons, screening inmates for susceptibility, and/or implementing environmental measures to reduce the risk of infection. ECF No. 4, at 68. However, these allegations do not show that Plaintiff had a serious medical and that any named Defendant failed to respond.

Insofar as Plaintiff alleges that he has been denied certain medications, his allegations are too vague to state a claim.

Plaintiff therefore fails to state a claim under the Eighth Amendment for deliberate indifference to a serious medical need.

4.  State Law Tort Claim

Finally, Plaintiff alleges a violation of California Government Code section 835, et seq., which provides for liability against public entities for injuries caused by a dangerous condition.

The California Government Claims Act requires that a tort claim against a public entity or its employees be presented to the California Victim Compensation and Government Claims Board, formerly known as the State Board of Control, no more than six months after the cause of action accrues. Cal. Gov't Code §§ 905.2, 910, 911.2, 945.4, 950-950.2. Presentation of a written claim, and action on or rejection of the claim are conditions precedent to suit. State v. Superior Court of Kings County (Bodde), 90 P.3d 116, 119 (Cal. 2004); Shirk v. Vista Unified School District, 42 Cal.4th 201, 209 (2007). To state a tort claim against a public employee, a plaintiff must allege compliance with the California Government Claims Act. Cal. Gov't Code § 950.6; Bodde, 90 P.3d at 123. "[F]ailure to allege facts demonstrating or excusing compliance with the requirement subjects a complaint to general demurrer for failure to state a cause of action." Bodde, 90 P.3d at 120.

Here, Plaintiff fails to allege compliance with the California Government Claims Act and he therefore fails to state a claim under California law.

///

///

**D.      CONCLUSION AND ORDER**

Plaintiff states an Eighth Amendment conditions of confinement claim against Defendant Hartley.  He does not state any other cognizable claims against any other Defendant.  Therefore, pursuant to Plaintiff's notification, this action SHALL go forward on the Eighth Amendment claim against Defendant Hartley.  All other claims, as well as ALL remaining Defendants, are DISMISSED .

IT IS SO ORDERED.

Dated:   **June 26, 2015**                                    /s/ *Dennis L. Beck*
                                                  UNITED STATES MAGISTRATE JUDGE